GEORGE A. GIBBS

*v.*

THE UNION MUTUAL LIFE INSURANCE COMPANY.

*Filed at Ottawa November 11, 1887.*

MORTGAGE—*what constitutes—as to the particular transaction.*   The owner of land gave a deed of trust thereon, with a power of sale, to secure a loan of $8000, to an insurance company, after which he sold and conveyed his equity of redemption to B, who was to pay the debt held by the company.   Finding a judgment against his grantor for a large amount, which was a lien on the equity of redemption, and to cut it off, B made an arrangement with the company whereby it was to foreclose the trust deed, acquire the title, and allow him six months in which to pay the sum due

under the trust deed, and on payment of which the company was to make him a deed. Failing to make payment, he filed his bill to redeem from the trustee's sale: *Held*, that the trustee's deed to the company did not, under the circumstances, become a mortgage to secure the indebtedness, but passed the title, and that the bill was properly dismissed.

APPEAL from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

Mr. JOHN WOODBRIDGE, for the appellant:

If, before a trustee's sale, it is agreed between the holder of the notes and the owner of the equity of redemption that the former shall bid in the property at the sale, and that the latter may pay the notes thereafter and obtain a deed of the property, the equity of redemption survives the sale. *Life Ins. Co.* v. *White,* 106 Ill. 69.

If any time is given within which a redemption may be made, the relation of mortgagor and mortgagee continues. *Life Ins. Co.* v. *White,* 106 Ill. 69.

The Statute of Frauds does not apply to such a case. In *Pensoneau* v. *Pulliam,* 47 Ill. 58, a verbal agreement was held valid, to the effect that a foreclosure should take place, the mortgagee should bid in the lands, and the debtor should have time to redeem, but no specified time was fixed.

In *Gibbons* v. *Hoag,* 95 Ill. 45, it was held that a bill to redeem could be filed until barred by the Statute of Limitations.

In *Union Mutual Life Ins. Co.* v. *Slee,* 110 Ill. 37, the present defendant interposed the same objections to a right to redeem which it makes here, but the court allowed the redemption.

In *Reigard* v. *McNeil,* 38 Ill. 400, an execution debtor made a verbal agreement with another, under which the latter purchased the debtor's land at the sale, with the agreement that the debtor should be permitted to redeem, but the purchaser refused to permit a redemption. The court decreed a redemption. See, also, *Schoonhoven* v. *Pratt,* 25 Ill. 457.

Mr. P. S. Grosscup, and Mr. Leonard Swett, for the appellee:

The intention of the parties determines whether a deed is taken absolutely or as a mortgage. *Taintor* v. *Keys,* 43 Ill. 334.

Clear and satisfactory proof is required to show that a deed, absolute in form, is but a security. *Lindauer* v. *Cummings,* 57 Ill. 200; *Eames* v. *Hardin,* 111 id. 640.

There can be no mortgage without a mortgage debt. Tiedman on Real Prop. sec. 310; *Hickox* v. *Lowe,* 10 Cal. 197; *Magnusson* v. *Johnson,* 73 Ill. 156; *Hancock* v. *Harper,* 86 id. 145; *Miller* v. *Thomas,* 14 id. 428; *Ranstead* v. *Otis,* 52 id. 30; *Caprez* v. *Trover,* 96 id. 456.

If the debt is extinguished, the deed can not stand as a mortgage. *Robinson* v. *Cropsey,* 2 Edw. Ch. 138.

The fact that the object was to cut off the lien of the judgment shows that an absolute sale was intended.


Mr. Justice Mulkey delivered the opinion of the Court:

The appellant, George A. Gibbs, on the 1st day of September, 1881, exhibited his bill in the Superior Court of Cook county, against the Union Mutual Life Insurance Company of Maine, the appellee, to redeem the lands now in controversy from a trustee's sale and conveyance, under which the company claims the lands in fee. The trust deed was executed by Daniel Evans, the owner of the lands, to L. D. Boone, on the 2d of November, 1875, to secure a loan from the company to Evans of $8000, payable in five years, and evidenced by the latter's notes. There was a hearing, upon the merits, in the Superior Court, resulting in a decree dismissing the complainant's bill. Gibbs brings the case here for review.

The record in the case is so voluminous, and the arguments of counsel have taken so wide a range, as to forbid any attempt on our part to review the evidence in detail, or to follow counsel in their discussion of it. We shall therefore content our-

selves with a statement, in as few words as may be, of what seems to be the vital and controlling issue in the case, and submit our conclusions in respect to it.

After the execution of the trust deed as above stated, Evans, by deed bearing date May 3, 1880, and recorded September 16, 1880, conveyed his equity of redemption in the premises to the appellant, Gibbs.   Boone, the trustee, on the 18th of May, 1880, sold the property under the trust deed, and the same was bid off by the company at $5000, and the trustee thereupon executed to the company a deed, in due form, for the premises, which was recorded June 26, 1880.   Gibbs, by quitclaim deed dated May 18, 1880, and recorded September 16, 1880, conveyed the property to the company; but it is claimed by him that this deed was placed in the hands of the company's attorney as an *escrow*, and not to be recorded except on certain conditions, which were never performed, and that the putting of it on record was without his consent, and in violation of the understanding between him and the company.   This, however, is positively denied by the latter.   Evans quitclaimed to the company July 5, 1882.

From this statement it is clear, that upon the face of the record the company has both the legal and equitable title to the property.

That the foregoing sales and transfers were made, is not disputed, but there is a sharp conflict as to the circumstances under which they were made, particularly the trustee's sale and conveyance to the company.   Gibbs claims that after his purchase he discovered a judgment against Evans, in favor of Faxon, for $7000, which was a prior lien upon the property but was subsequent to the company's trust deed, and that with the view of cutting off the lien of that judgment, and of obtaining a priority over it, he effected an arrangement with the company, through Warfield, its financial agent, and Kendall, its attorney, by which it was agreed that the property should be advertised and sold under the trust deed; that the company

was to bid it off at $5000, if nobody offered more, and take a deed therefor; that Gibbs was to have the privilege, at any time within six months, to redeem from the company, by paying to it the unpaid balance on the Evans notes, then amounting to some $12,000 or $13,000, and, in the event Gibbs failed to redeem, the company was in any event to deliver to him, cancelled, the Evans notes, which Gibbs swears he was, under his contract of purchase from Evans, bound to pay off. The company, in the first place, denies that there was any such a contract or understanding as that claimed by Gibbs, but at the same time it insists that, even conceding the existence of such an arrangement, neither Warfield nor Kendall had any authority from the company to enter into it, and that the company is not therefore bound by it. It is clear, beyond doubt, that the company did not want the property, but that it was anxious to get the money for which it was pledged, and with this view it admits that it agreed with Gibbs that if it bid off the property at the trustee's sale, it would, after acquiring title from the trustee, convey the property, upon receiving the full amount of the company's claim, to such person as Gibbs should designate, he claiming that he had or would have a purchaser ready to pay for and take the property from the company as soon as the necessary conveyances could be prepared and exchanged. The company positively denies there was any agreement to extend the time of payment by Gibbs or his proposed purchaser, or to hold the property subject to redemption by either of them, and in this claim we think the company is sustained by the decided weight of evidence. It is true the company's desire to get the money instead of taking the land induced it to hold the matter open longer than it otherwise would have done, after the trustee's sale, so as to afford Gibbs every possible opportunity to raise the money.

Accepting, as we do, appellee's theory of the case as best supported by the evidence, and, therefore, more likely the true one, we regard the arrangement between the parties, so far as

the company is concerned, nothing more than a verbal execu-
tory promise, on its part, that in the event it became the pur-
chaser of the property at the trustee's sale, it would sell the
same to Gibbs, or his unknown purchaser, for the amount of
its claim under the trust deed.   To this verbal promise and
undertaking the company has interposed as a defence, among
other things, the Statute of Frauds.   Outside of this defence,
however, the proofs, in our opinion, abundantly show that the
company is not at all responsible for the non-performance
of its promise, and its failure in that respect is attributable
wholly to Gibbs' own default.   It is not pretended that the
latter paid or offered to pay for the property in the six months
within which he states himself that he was to pay for it, but
the contention is that the trustee's deed to the company, by
reason of the circumstances as testified to by Gibbs, became,
and is in legal effect, a mere security for the original indebt-
edness, and that the right to redeem will continue until there
is a foreclosure by the company.   But, as already stated, we
can not accept appellant's version of the circumstances under
which the sale was made.   We are satisfied from the evidence
that it was the purpose and intention of all the parties to the
transaction that the title to the property should become abso-
lute in the company.   Any other view would be inconsistent
with the object Gibbs had in wanting the property sold under
the trust deed,—viz., to free it from the lien of the Faxon
judgment.   He was willing to take the risk of the company's
keeping its promise with him, and the proofs warrant the state-
ment that his confidence was not misplaced.   If appellant
has lost any thing by the transaction, it is because he failed
to keep his own agreement.   Taking this view of the main
question in the case, it is apparent that it would be a fruitless
task to discuss other questions presented by the record.

   It follows from what we have said, that the court below did
not err in dismissing complainant's bill upon the hearing.

*Decree affirmed.*